RP

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan W. Pardini, | No. CV 08-1509-PHX-DGC (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

On March 4, 2008, Plaintiff Jonathan W. Pardini, who is confined in the Arizona State Prison Complex-Yuma (ASPC-Yuma), filed in the Tucson Division of this Court a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. #3). The Clerk of Court assigned this action the case number of CV 08-136-TUC-CKJ. Plaintiff did not pay the $350.00 civil action filing fee but filed a deficient Application to Proceed *In Forma Pauperis*.

By Order filed March 14, 2008 (Doc. #3), the Court denied Plaintiff's Application to Proceed *In Forma Pauperis* without prejudice. Plaintiff was given 30 days to either pay the $350.00 filing fee or file a new, completed Application to Proceed *In Forma Pauperis* and a certified six-month trust account statement from Central Office of the Arizona Department of Corrections (ADOC). On April 15, 2008, Plaintiff filed a new Application to Proceed *In Forma Pauperis* (Doc. #4).

**TERMPSREF**

By Order filed August 15, 2008 (Doc. #5), the Court transferred this action to the Phoenix Division of the Court because the cause of action arose in Yuma County, which is within the Phoenix Division. The Clerk of Court in Phoenix assigned this case the new case number of CV 08-1509-PHX-DGC (ECV).

The Court will order Defendant Watson to answer Counts I and II of the Complaint, will order Defendant Villalobos to answer Count I of the Complaint, will order Defendant Schriro to answer Count III of the Complaint, and will dismiss the remaining counts and Defendants for failure to state a claim upon which relief may be granted.

## I.     Application to Proceed *In Forma Pauperis* and Filing Fee

Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. #4) will be granted. Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $23.62. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula..

## II.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## III.   Complaint

Named as Defendants in the Complaint are: (1) Dora Schriro, ADOC Director; (2) Herb Haley, ADOC Protective Segregation Administrator; (3) Kristine Harkin, Classification Officer; (4) Stephan Morris, Classification Supervisor; (5) J. Franko, Deputy Warden, Cheyenne Unit, ASPC-Yuma; (6) R. Watson, Assistant Deputy Warden, Cheyenne

Unit, ASPC-Yuma; (7) S. Miller, Captain, Chief of Security, Cheyenne Unit, ASPC-Yuma; (8) Villalobos, Sergeant, Cheyenne Unit, ASPC-Yuma; (9) McNatt, Sergeant, S.S.U. Supervisor, Cheyenne Unit, ASPC-Yuma; (10) Dempsy, Corrections Officer, S.S.U. Department, Cheyenne Unit, ASPC-Yuma; (11) Clark, Sergeant, Disciplinary Coordinator, Cheyenne Unit/CDU, ASPC-Yuma; (12) Barron, Sergeant, CDU Supervisor, Cheyenne Unit/CDU, ASPC-Yuma; and (13) Sundwall, Captain, Disciplinary Hearing Officer, Cheyenne Unit/CDU, ASPC-Yuma.

Plaintiff presents five counts in the Complaint. Plaintiff seeks a jury trial, declaratory and injunctive relief, compensatory and punitive monetary damages, and costs and fees.

## IV.  Discussion

### A.  Count I

In Count I, Plaintiff claims that he has been subjected to a "Failure To Protect, Threat To Safety" and that "he has been repeatedly physically assaulted everywhere ADOC staff assign him placement, stating that each time he just needed [to be] moved to an alternate general population location." Plaintiff alleges that these assaults stemmed from word being sent throughout the prison system by his co-defendant that he was a snitch.

Plaintiff specifically alleges that on December 7, 2007, he was placed in the Cheyenne Unit of ASPC-Yuma, even after he advised "a Captain for ADOC" that his placement "would pose a threat to his safety due to it[]s proximity to the Dakota Unit, where inmates who were aware of his situation would have been transferred." Plaintiff states that "he was assured he would be interviewed prior to placement on the unit, by security called S.S.U. and he would be able to convey this information to them." However, Plaintiff claims that when he advised CO II Ortiz and Defendants Sgt. Villalobos of "this problem" upon his arrival at the Cheyenne Unit, Defendant Villalobos "instructed Plaintiff he would not be interviewed by S.S.U. staff or any other, he would be assigned placement on the unit, and he had no recourse regarding concerns to his safety, even while he saw inmates from the adjacent unit posing that danger waiting for him on that very unit." Some time after following "the direct order by staff to go to his assigned placement," Plaintiff claims that he "was physically assaulted

1  again by multiple inmates and told he had to leave the unit."

2  Plaintiff allege that on December 8, 2007, he "sought protective placement by
3  Security Staff due to the physical assaults and threats" and was placed in the Complex
4  Detention Unit (CDU). Plaintiff further alleges that Defendant Watson entered CDU and
5  advised him that he would be returned to the unit where he "was just assaulted and removed
6  from" and that he would "have to accept the physical assaults" and that "refusal" to do so
7  "would result in refusal of shelter, adequate clothing, all property, medication, food, legal
8  materials, etc. until [he] complied." Plaintiff states that on December 15, 2007, he "received
9  most of the allowable property."

10  Plaintiff's claims in Count I will be liberally construed as being brought under the
11  Eighth Amendment. A prison official violates the Eighth Amendment in failing to protect
12  an inmate only when two conditions are met. First, the alleged constitutional deprivation
13  must be, objectively, "sufficiently serious;" the official's act or omission must result in the
14  denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S.
15  825, 834 (1994). Second, the prison official must have a "sufficiently culpable state of
16  mind," *i.e.*, he must act with deliberate indifference to inmate health or safety. Id. In
17  defining "deliberate indifference" in this context, the Supreme Court has imposed a
18  subjective test: "the official must both be aware of the facts from which the inference could
19  be drawn that a substantial risk of serious harm exists, and he must also draw the inference."
20  Id. at 837 (emphasis added).

21  Deliberate indifference is a higher standard than negligence or lack of ordinary due
22  care for the prisoner's safety. Id. at 835. A merely negligent failure to protect an inmate is
23  not actionable under § 1983. Davidson v. Cannon, 474 U.S. 344, 347 (1986).

24  Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519,
25  520-21 (1972), conclusory and vague allegations will not support a cause of action. Ivey v.
26  Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further,
27  a liberal interpretation of a civil rights complaint may not supply essential elements of the
28  claim that were not initially pled. Id.

### 1.      **Defendant Schriro**

Plaintiff alleges that Defendant Schriro "enacted policies, procedures and practices which instructed, allowed and/or enable the threat to safety of the Plaintiff to take place; allowed it to perpetuate, and disallows a means of safety for staff or Plaintiff to stop it. Also, she has enacted policies, procedures and/or practices which are illegal as written and/or applied. Also, she has failed to act in a manner which conforms to State and/or Federal Constitutional standards, or properly supervise those who don't meet said standards, which she had or should have knowledge of."

Plaintiff's allegations against Defendant Schriro are too conclusory and vague to state a claim under the Eighth Amendment. Plaintiff does not state any facts whatsoever to support these allegations. He does not describe any of the policies, procedures, or practices allegedly at issue, and does not show how Defendant Schriro failed to "properly" supervise anyone. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Schriro in Count I.

### 2.      **Defendant Haley**

Plaintiff alleges that Defendant Haley "failed to recognize the continued threat to safety of the Plaintiff in denying assignment to protective placement, by denying such assignment, and continue to." Plaintiff has not stated any facts to support this allegation, such as when this happened, where this happened, or what facts Defendant Haley knew when he made this decision. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Haley in Count I.

### 3.      **Defendants Harkin and Morris**

Plaintiff alleges that Defendants Harkin and Morris "failed to provide safe placement to Plaintiff by repeatedly assigning him to locations which endanger(ed) his life, and continue to do so." Again, Plaintiff has not stated any facts to support this allegation, such as when this happened, where, or what facts Defendant Harkin or Morris knew when they assigned him to these unspecified locations. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against either Defendant Harkin or Morris in Count I.

**4.     Defendants Franko, Watson, Miller, Villalobos, McNatt, and Dempsey**

Plaintiff alleges that Defendants Franko, Watson, Miller, Villalobos, McNatt, and Dempsey "all allowed placement at the Cheyenne Unit when they knew or should have known the threat to Plaintiff's life." However, Plaintiff has not stated any facts at all to support this allegation against Defendants Franko and Miller. Moreover, with regard to Defendants McNatt and Dempsey, Plaintiff only states that he was interviewed by Defendant Dempsy of S.S.U. on December 10, 2007, that Defendant Dempsey informed him that he would not be returned to the same unit, and that when he was interviewed by Defendants McNatt and Dempsey on December 13, 2007, "it was stated to [him] they didn't know why [he] received the treatment [he] did, but once they learned of it they were carefull[] to keep their distance to it due to the potential rep[er]cussion which could stem from it" and that "it seemed odd how it happened as they had not completed their initial stages of the investigation which was the practice, and felt that serious mistakes were made." None of these facts support a violation of the Eighth Amendment. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Franko, Miller, McNatt, and Dempsey in Count I.

Liberally construed, Plaintiff's complaint states an Eighth Amendment claim against Defendants Watson and Villalobos. Accordingly, the Court will call for an answer to Count I from Defendants Watson and Villalobos.

**B.     Count II**

In Count II, Plaintiff claims that, as described in Count I, he was denied "food and medication, adequate cold weather clothing, all legal and writing material, and hygiene." Plaintiff's claims in Count II will be liberally construed as being brought under the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520 (1979) (A convicted inmate's claims for unconstitutional conditions arises from the Eighth Amendment prohibition against cruel and unusual punishment).

To state a claim for unconstitutional conditions, a plaintiff must allege an objectively

TERMPSREF

- 6 -

1  "sufficiently serious" deprivation that results in the denial of "the minimal civilized measure
2  of life's necessities." Farmer, 511 U.S. at 834; Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.
3  1994); see Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002). That
4  is, a plaintiff must allege facts supporting that he is incarcerated under conditions posing a
5  substantial risk of harm. Farmer, 511 U.S. at 834. In addition to alleging facts to support
6  that he is confined in conditions posing a substantial risk of harm, a plaintiff must also allege
7  facts to support that a defendant had a "sufficiently culpable state of mind," i.e., that the
8  official acted with deliberate indifference to inmate health or safety. See Farmer, 511 U.S.
9  837. In defining "deliberate indifference" in the jail context, the Supreme Court has imposed
10 a subjective test: "the official must both be aware of the facts from which the inference could
11 be drawn that a substantial risk of serious harm exists, and he must also draw the inference."
12 Id.

### 1.  Defendant Schriro

Plaintiff alleges that Defendant Schriro "implemented internal policies, procedures and/or practices authorizing the condition, actions and omissions described in Count I. Additionally, this designation of behavior and treatment of Plaintiff prevented other ADOC staff from potentially or effectively intervening in an effort to prevent it, thereby failing to properly supervise subordinates when she knew or should have known."

As with Count I, Plaintiff's allegations against Defendant Schriro in Count II are too conclusory and vague to state a claim under the Eighth Amendment. Again, Plaintiff does not state any facts to support these allegations. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Schriro in Count II.

### 2.  Defendants Franko, Watson, Miller, Villalobos, McNatt, Dempsey, and Barron

Plaintiff alleges that Defendants Franko, Watson, Miller, Villalobos, McNatt, Dempsey, and Barron "all knew or should have known their acts and/or omissions in conjunction to said conditions was/is illegal and violative, as well as their failure to adequately supervise their subordinates who also participated or omitted to prevent said

1  treatment and conditions. All had actual and or constructive knowledge of the behavior
2  undertaken, and failed to prevent it or participated in asserting it."

3  Plaintiff has not stated any facts at all to support these allegation against Defendants
4  Franko, Miller, McNatt, Dempsy, and Barron. With regard to Defendant Villalobos, Plaintiff
5  only states in Count I that during the time that he was refused "shelter, adequate clothing, all
6  property, medication, food, legal materials, etc.," Plaintiff had occasion to question
7  Defendant Villalobos and another officer, Lt. Smith, "who advised [him] such denial (s) were
8  based upon" Defendant Watson's "instructions." Thus, it appears that Defendant Watson
9  was the person responsible for the denial of these basic necessities, not Defendant Villalobos.
10 Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against
11 Defendants Franko, Miller, Villalobos, McNatt, Dempsey, and Barron in Count II.

12 Liberally construed, Plaintiff's complaint states an Eighth Amendment claim against
13 Defendant Watson. Accordingly, the Court will call for an answer to Count II from
14 Defendant Watson.

15 **C.    Count III**

16 In Count III, Plaintiff claims that he was denied due process prior to punishment and
17 before deprivation of rights and privileges. Plaintiff's claims in Count III will be liberally
18 construed as being brought under the Due Process Clause of the Fourteenth Amendment.

19 **1.    Defendant Schriro**

20 Plaintiff alleges that Defendant Schriro:

21 has implemented a classification policy that determines inmate custody rights,
   privileges and placement which allows for no input by the effected inmate it
22 concerns or any appeal process to address errors, eliminating all due process
   for the inmate to address their accusers[,] to information used against him as
23 well as no manner for the inmate to effectively provide important information
24 in determining facts relied upon, thus adversely effecting all aspects of due
   process and operating at times as punishment as well as arbitrary and
25 capricious determinations. This is the only process used. It is illegal as
   written and applied. Inmates are, by use of this policy, practice, procedure and
26 guidelines, placed in danger, and as in the D.I. 67 process when asked where
   they may recommend (only during D.I. 67 process, not reclass) it's used as a
27 means to do just the opposite. Additionally, Defendant Schriro denies due
28 process in utilizing the method of denying food, property, medications, legal

materials, adequate clothing, mail, hygiene, etc. It's just summarily denied.

Liberally construed, Plaintiff's complaint has stated a due process claim against Defendant Schriro. Accordingly, the Court will call for an answer to Count III from Defendant Schriro.

### 2. Defendant Haley

Plaintiff alleges that Defendant Haley "repeatedly denied Plaintiff's right to protection by refusing protective placement, violating his due process." However, Plaintiff has not stated any facts to support this allegation, such as when this happened, where, what facts Defendant Haley knew when he made this decision, or how he denied Plaintiff due process in making his decision. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Haley in Count III.

### 3. Defendants Harkin and Morris

Plaintiff alleges that Defendants Harkin and Morris "denied Plaintiff his due process in using said reclass policy(s) which disallows the necessary facts and information to be provided and/or used, and relied upon. It disallows any input by the inmate while detrimentally effecting his safety, visitation, parole, jobs, education, rights, privileges, property, court access, etc., in their use of a procedure that's illegal as written and as they apply it."

Plaintiff has not stated any facts to support this conclusory and vague allegation. He does not give any details of when and how Defendants Harkin and Morris used the reclassification policy. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against either Defendant Harkin or Morris in Count III.

### 4. Defendants Franko, Watson, Miller, Villalobos, McNatt, Dempsy and Barron

Plaintiff alleges in part that Defendants Franko, Watson, Miller, Villalobos, McNatt, Dempsy and Barron "allowed, participated in, knew of, failed to prevent, ordered, or caused by act or omission the removal of all property, medication, hygiene, shelter and all the things listed previous, for the Plaintiff resisting/failing to agree or cooperate and waive his right to

protection from physical assault." Plaintiff further alleges that "[t]hese Defendants created, followed, authorized, contributed, allowed and/or failed to prevent said conditions for which no immediate[] recourse was available, due to no means allowed to access the long time process of the grievance procedure." Plaintiff argues that "[w]hen Plaintiff is stripped of all property and access to any means, that due process avenue is intentionally and effectively barred from him, by the Defendants."

Plaintiff's allegations against Defendants Franko, Watson, Miller, Villalobos, McNatt, Dempsy and Barron in Count III are conclusory and vague. Plaintiff does not describe specific, individual actions of any of these Defendants. General allegations against a group of Defendants are not sufficient. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Franko, Watson, Miller, Villalobos, McNatt, Dempsy and Barron in Count III.

### 5. Defendant Clark

Plaintiff alleges that Defendant Clark "processed a false disciplinary report against Plaintiff, without proper investigatory review, which resulted in a wrongful guilty finding, and the Plaintiff being placed on disciplinary loss of privileges beyond the thirty days allowed by policy, and continues to run." Again, Plaintiff's allegation is conclusory and vague. Plaintiff does not explain what the disciplinary report was about, what was improper about Defendant Clark's investigatory review, and how the improper review resulted in a wrongful guilty finding. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Clark in Count III.

### D.    Count IV

In Count IV, Plaintiff claims that he "was returned to the same complex (Yuma) and housed with the same inmates he was previously removed from due to safety/life if continuation of housing proximity, without any factual determination made that placement was/is safe, as retaliation for previously seeking protections by AD[O]C staff." Plaintiff also claims that he was "placed outside in weather that prevailed in the low 30 degree temperature, without adequate clothing, and denied all food, medication, property, legal

**TERMPSREF**                                    - 10 -

1  materials, court access, clothing, property, hygiene, etc. for days on end for seeking
2  protective placement from continued physical assaults known to have occurred."

3  "A prisoner suing prison officials under section 1983 for retaliation must allege that
4  he was retaliated against for exercising his constitutional rights and that the retaliatory action
5  does not advance legitimate penological goals, such as preserving institutional order and
6  discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994). Thus, to succeed on
7  the merits of a retaliation claim, a prisoner must demonstrate that he was retaliated against
8  for exercising his constitutional rights, and he must also demonstrate that the retaliatory
9  action does not advance a legitimate penological goal, or is not narrowly tailored to achieve
10 that goal. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

11 Plaintiff has not specifically alleged in Count IV that he was retaliated against for
12 exercising his constitutional rights. Moreover, Plaintiff has not demonstrated that the alleged
13 retaliatory action does not advance a legitimate penological goal, or is not narrowly tailored
14 to achieve that goal. Accordingly, Count IV will be dismissed for failure to state a claim
15 upon which relief may be granted.

16 **E.    Count V**

17 In Count V, Plaintiff claims that all of the Defendants abused their authority and that
18 this abuse of authority "raised to a level of unconstitutional behavior, violative of Plaintiff's
19 rights/privileges." In order to state a claim under 42 U.S.C. § 1983, Plaintiff must show that
20 the conduct of a defendant deprived him of a constitutional right. Haygood v. Younger, 769
21 F.2d 1350, 1354 (9th Cir. 1985) (*en banc*). However, Plaintiff has failed to allege the
22 violation of a specific constitutional provision in Count III. Plaintiff simply does not have
23 a constitutional right for prison officials not to abuse their authority. Accordingly, Count IV
24 will be dismissed for failure to state a claim upon which relief may be granted.

25 **V.    Dismissal of Defendants**

26 Because no claims now remain against them, Defendants Herb Haley, Kristine Harkin,
27 Stephan Morris, J. Franko, S. Miller, McNatt, Dempsy, Clark, Barron, and Sundwall will be
28 dismissed from this action will be dismissed from this action for failure to state a claim upon

1  which relief may be granted.

2  **VI.	Warnings**

3  	**A.	Release**

4  	Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. 5  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay 6  the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result 7  in dismissal of this action.

8  	**B.	Address Changes**

9  	Plaintiff must file and serve a notice of a change of address in accordance with Rule 10 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other 11 relief with a notice of change of address.  Failure to comply may result in dismissal of this 12 action.

13 	**C.	Copies**

14 	Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy 15 of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate 16 stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit 17 an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply 18 may result in the filing being stricken without further notice to Plaintiff.

19 	**D.	Possible Dismissal**

20 	If Plaintiff fails to timely comply with every provision of this Order, including these 21 warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet, 22 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to 23 comply with any order of the Court).

24 **IT IS ORDERED:**

25 	(1)	Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. #4) is **granted**.

26 	(2)	As required by the accompanying Order to the appropriate government agency, 27 Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $23.62.

28 	(3)	Counts IV and V of the Complaint are **dismissed** for failure to state a claim

TERMPSREF

- 12 -

1  upon which relief may be granted.

2  (4) Defendants Herb Haley, Kristine Harkin, Stephan Morris, J. Franko, S. Miller, McNatt, Dempsy, Clark, Barron, and Sundwall are **dismissed** from this action for failure to state a claim upon which relief may be granted.

5  (5) Defendant Watson **must answer** Counts I and II of the Complaint, Defendant Villalobos **must answer** Count I of the Complaint, and Defendant Schriro **must answer** Count III of the Complaint.

8  (6) The Clerk of Court **must send** Plaintiff a service packet including the Complaint (Doc. #1), this Order, and both summons and request for waiver forms for Defendants Dora Schriro, Villalobos, and R. Watson.

11  (7) Plaintiff **must complete and return** the service packet to the Clerk of Court within 20 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

14  (8) **If** Plaintiff does not **either** obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action **may be dismissed** as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

19  (9) The United States Marshal **must retain** the Summons, a copy of the Complaint, and a copy of this Order for future use.

21  (10) The United States Marshal **must notify** Defendants Dora Schriro, Villalobos, and R. Watson of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

28  (a) **personally serve** copies of the Summons, Complaint, and this Order

**TERMPSREF**

- 13 -

upon the Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, **file** the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(12) Defendants **must answer** Counts I, II, and III of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) Any answer or response **must state** the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(14) This matter is **referred** to Magistrate Judge Edward C. Voss pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings.

DATED this 2nd day of September, 2008.

*David G. Campbell*
———————————————
David G. Campbell
United States District Judge