JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jonathan W. Pardini, | No. CV 08-1509-PHX-DGC (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Jonathan W. Pardini brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Dora Schriro, Associate Deputy Warden Watson, and Sergeant Villalobos (Doc. #1). Before the Court is Defendants' Motion to Dismiss for failure to exhaust administrative remedies (Doc. #14). Plaintiff did not respond to the motion. The Court will grant Defendants' motion and terminate the action.

**I.     Background**

Plaintiff's claims arose during his confinement at the Arizona State Prison Complex-Yuma in Arizona (Doc. #1 at 1). In Count I, Plaintiff alleged a failure-to-protect/threat-to-safety claim (id. at 3). Plaintiff averred that he was repeatedly assaulted at each housing assignment as a result of his reputation in the prison system as a snitch. He alleged that despite this obvious threat and Plaintiff's concerns about safety at a new placement location – the Cheyenne Unit, Villalobos advised him that there would be no investigation and Plaintiff had no recourse; he would be assigned to the Cheyenne Unit (id. at 3-3A). Plaintiff claimed that he followed a direct order to go to his assigned placement, he was assaulted by

multiple inmates, and he sought protective placement (id. at 3A-3B). Plaintiff alleged that Watson then advised him that he would be returned to the Cheyenne Unit and if Plaintiff refused, he would lose personal property, medication, food, and legal materials (id.).

In Count II, Plaintiff claimed Watson was liable for denying Plaintiff food, medication, adequate clothing, and legal and hygiene materials (id. at 4). And in Count III, Plaintiff alleged that Schriro is liable for establishing ADC policy that deprives due process prior to punishment and before the deprivation of rights and privileges (id. at 5).[1]

The Court directed Schriro, Watson, and Villalobos to respond to the Complaint (Doc. #6), and they filed an Answer (Doc. #11). Defendants then filed their Motion to Dismiss (Doc. #14).

## II. Motion to Dismiss

In their motion, Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, Defendants submit the declaration of Correctional Officer III M. Huizar, who works as the Unit Grievance Coordinator (Doc. #14, Ex. A, Huizar Decl. ¶¶ 1-2). Huizar avers that ADC's inmate grievance policy is set forth in Department Order (DO) 802, *Inmate Grievance System*, and is available to all inmates in each unit's library (id. ¶ 4). Defendants submit a copy of DO 802, which describes the grievance procedure steps (id., Ex. B). An inmate first attempts to resolve the issue informally by filing an Informal Resolution (id., DO 802.08 § 1.1). If the issue is not resolved, the inmate may submit a formal grievance within ten calendar days from the date of the Informal Resolution response (id., DO 802.09 § 1.1.2). The Unit Grievance Coordinator must respond to the formal grievance within 20 days (id., 802.09 § 1.2.1). If the inmate seeks to appeal the Grievance Coordinator's response, he has 10 days to appeal to the Warden or Deputy Warden (id., DO 802.09 § 1.3.1). The Warden or Deputy Warden shall provide a written response with 20 calendar days of

---

[1] Upon screening, the Court dismissed Counts IV and V and dismissed Haley, Harkin, Morris, Franko, Miller, McNatt, Dempsy, Clark, Barron, and Sundwall as Defendants (Doc. #6).

- 2 -

receipt of the appeal (id., DO 802.09 § 1.3.3). The response must include instructions to the inmate that he may appeal the administrative decision to the Director (id., DO 802.09 § 1.3.4). Finally, if the inmate seeks to appeal the Warden/Deputy Warden's response, he may file an appeal to the Director within 10 days of receipt of that response (id., DO 802.09 § 1.4.1). The Director's response, due within 30 days, concludes the grievance procedures (id., DO 802.09 § 1.4.4). The maximum length of time for completion of the grievance process – from initiation to final disposition – is 100 calendar days (id., DO 802.07 1.2.4). And if the time limit for response expires at any level in the process, the inmate may proceed to the next review level (id.).

Defendants submit that Plaintiff initiated just one formal grievance related to his concerns about his housing assignment and his claim that Watson denied him food, bedding, shelter, clothing and toilet facilities until Plaintiff agreed to placement in a unit where he was previously assaulted (id., Ex. A, Huizar Decl. ¶ 9, Attach. 1). Defendants state that Plaintiff appealed the formal grievance response, and although he directed his grievance appeal to "Director," it was the first appeal in the process and was therefore properly forwarded to the Deputy Warden (id. at 8). Defendants maintain that after Plaintiff received the Deputy Warden's response, he failed to submit an appeal to the Director (Doc. #14 at 3; Ex. A, Huizar Decl. ¶ 10).

Defendants further argue that Plaintiff brought this action prematurely because he filed his Complaint before the time limits for the final grievance steps had expired (id. at 3). Defendants explain that under the grievance policy, the Deputy Warden's response is due within 20 calendar days and here, Plaintiff signed and dated his grievance appeal on February 17, 2008; thus, the response was due by March 9, 2008 (id. at 8). Defendants note that Plaintiff filed his Complaint on March 4, 2008 (id.). They contend that even if Plaintiff's grievance appeal that was directed to Schriro, the "Director," was construed as the final appeal to the Director, the grievance policy provides 30 days for a response and Plaintiff initiated this lawsuit before 30 days had run (id. at 8).

1    Lastly, Defendants argue that Plaintiff's single grievance related only to Watson's conduct and was insufficient to put prison officials on notice of the nature of the complaints against Villalobos (threat to safety) or Schriro (deprivation of due process) and therefore does not constitute an attempt to exhaust those claims (id. at 8-9). Defendants explain that as to his claim in Count III, Plaintiff was obligated to pursue a Written Instruction Grievance as described in DO 802, which provides a grievance system for complaints related to ADC's classification policy (id. at 10).

The Court informed Plaintiff of his obligation to respond and the evidence necessary to rebut Defendants' contentions successfully (Doc. #15).[2] Plaintiff did not respond to the motion. The time for responding has expired, and the motion is ready for ruling.

**III.    Exhaustion**

**A.    Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

---

[2] Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

- 4 -

**B.     Analysis**

As stated, Defendants bear the burden of proving lack of exhaustion and therefore must demonstrate that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). Defendants submit evidence that a grievance system was available at the jail for Plaintiff's claims (Doc. #14, Ex. A, Huizar Decl. ¶ 4 ). They also submit evidence showing that Plaintiff's sole grievance was limited to his claims against Watson, which include Counts I and II, and that he failed to properly exhaust those claims (id. ¶¶ 9-10, Attachs.).

In his Complaint, Plaintiff provided some information regarding his attempts to exhaust his three counts (Doc. #1 at 3-5). As to Count I, he stated that he submitted a request for administrative relief, but that he did not appeal to the highest level because "the process is underway; prior to judicial review if filed after the final appeal" (id. at 3). For Count II, Plaintiff stated that he did appeal to the highest level and that "its at the [highest] level allowed as processing occurs past each level" (id. at 4). It is unclear what Plaintiff means by "prior to judicial review if filed after the final appeal'; however, his assertion that the process is "underway" supports Defendants' evidence that Plaintiff initiated this action before exhaustion was completed (id. ¶¶ 9-10, Attachs. 1-5, Ex. B).

As argued by Defendants, exhaustion must be completed prior to filing a complaint in federal court. Vaden v. Summerhill, 449 F.3d 1047, 1050-51 (9th Cir. 2006). A prisoner "may initiate litigation in federal court only *after* the administrative process ends." Id. at 1051 (emphasis added); see also McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Plaintiff's filing of his Complaint on March 4, 2008, was before the time period had run for a response to his appeal. Moreover, the evidence shows that Plaintiff did not submit a final appeal to the Director as required under the grievance policy. As such, he did not properly exhaust his claims against Watson, and those claims within Counts I and II must be dismissed. See Woodford, 548 U.S. at 92.

Defendants submit evidence that Plaintiff did not file any grievances seeking relief for the claim in Count I against Villalobos or for the claim in Count III against Schriro (see

Doc. #14, Ex. A, Huizar Decl. ¶ 9, Attachs.). With respect to his policy claim in Count III, Plaintiff stated in his Complaint that there was no appeal process for reclassification and that administrative relief was "banned by policy" (Doc. #1 at 3, 5). But Plaintiff did not explain why he believed that his claim was not appealable or why he could not pursue a Written Instruction Grievance under the grievance policy, which – as explained by Defendants – specifically applies to challenges to ADC policies (Doc. #14 at 10, Ex. B, DO 802.13).[3] And there is nothing in Plaintiff's Complaint explaining why he did not file a grievance for his claim against Villalobos.

In failing to respond to Defendants' motion, Plaintiff did not refute evidence that the claims in Counts I and III were grievable and appealable and that he failed to use the available grievance system. Based on the undisputed evidence before the Court, Plaintiff failed to exhaust his administrative remedies, and Defendants' motion will be granted.

**IV.    Lack of a Response**

Alternately, the Court has the discretion under Rule 7.2(i) of the Local Rules of Civil Procedure to deem Plaintiff's lack of response as consent to Defendants' Motion to Dismiss. Plaintiff was warned of this possibility (Doc. # 15). The Ninth Circuit has upheld a dismissal based on a failure to comply with a similar local rule in the District of Nevada. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995). Before dismissal on this basis, the court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. at 53 (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). If the court does not consider these factors, the record may be reviewed independently on appeal for abuse of discretion. Henderson, 779 F.2d at 1424.

---

[3] In their motion, Defendants mistakenly cite to DO 802.14 rather than DO 802.13 in reference to the procedures for Grievance of Department Written Instruction (Doc. #14 at 10). Department order 802.14 concerns procedural exceptions made if an inmate is transferred during the grievance process (id., Ex. B, DO 802.14).

The first three factors do not favor Plaintiff, particularly in light of the fact that Plaintiff has ostensibly lost interest in prosecuting his action. There is no risk of prejudice to Defendants to resolve the motion in their favor, and judicial efficiency also favors resolution of this action. The fourth factor of favoring disposition of cases on their merits weighs in Plaintiff's favor, and for the fifth factor, dismissal without prejudice is the least drastic sanction. In light of the overall five-factor analysis weighing in Defendants' favor, the Court will deem Plaintiff's lack of a response as a consent to the granting of the motion and dismiss the action without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. #14).

(2) Defendants' Motion to Dismiss (Doc. #14) is **granted**; Plaintiff's action is dismissed without prejudice for failure to exhaust or, alternately, for failure to respond.

(3) The Clerk of Court must enter judgment of dismissal accordingly.

DATED this 17th day of November, 2009.

David G. Campbell
United States District Judge